CULPEPPER IP, LLLC
Kerry S. Culpepper, Bar No. 9837
75-170 Hualalai Road, Suite B204
Kailua-Kona, Hawai'i 96740
Telephone:  (808) 464-4047
Facsimile:   (202) 204-5181
E-Mail:       kculpepper@culpepperip.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| Hunter Killer Productions, Inc. et al. | ) | **Case No.: 1:19-cv-168-LEK-KJM** |
| | ) | (Copyright) |
| Plaintiffs, | ) | |
| vs. | ) | MEMORANDUM IN SUPPORT OF |
| | ) | PLAINTIFFS' MOTION FOR |
| Qazi Muhammad Zarlish et al., | ) | DEFAULT JUDGMENT AGAINST |
| | ) | DEFENDANT NGHI PHAN NHAT |
| Defendants. | ) | |
| | ) | |
| | ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NGHI PHAN NHAT

**<u>Table of Contents:</u>**

Table of Authorities..................................................................... 3

I.      Introduction ........................................................................7

II.     Subject Matter Jurisdiction and Venue......................................... 10

III.    Personal Jurisdiction ...................................................................10

IV.     Defendant's Default Entered........................................................ 16

V.      Argument................................................................................ 17

        A.      Copyright Infringements Have Been Established ............................. 17

        B.      Default Judgment is Appropriate ........................................ 18

VI.     Statutory Damages for Willful Copyright Infringement…........................ 23

VII.    Plaintiffs are Entitled to Injunctive Relief .................................... 25

VIII.   Plaintiffs are Entitled to Attorney's Fees and Costs.................................. 28

        A.      The Degree of Success in the Litigation………................................29

        B.      Deterrence…………………........................................................ 29

        C.      The Goals of the Copyright Act....................................................... 29

        D.      Objective Unreasonableness…........................................................ 30

        E.      Calculation of Attorney's Fees……………………………………………30

IX.     Conclusion..................................................................................... 33

**Table of Authorities:**

*Statutes and Rules*

United States Copyright Act, 17 U.S.C. §§ 101 et seq....................................7, 10, 17

15 U.S.C. §1117…………………………………………………………………….7

17 U.S.C. § 410(c)……………………………………………………………17

17 U.S.C. § 502(a)...................................................................................26

17 U.S.C. § 504(c)...................................................................................24

17 U.S.C. § 505 ......................................................................................... 28

17 U.S.C. § 512(c)(3)(A)………………………………………………………8

28 U.S.C. § 1331............................................................................................ 10

28 U.S.C. § 1338(a) ...................................................................................... 10

28 U.S.C. §§ 1391(b) and (c)......................................................................... 10

28 U.S.C. § 1400(a) ...................................................................................... 10

Fed. R. Civ. P. 55(b)(2) ................................................................................19, 22

*Cases*

*AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) …..………6

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)…..12

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n.16 (S.D.N.Y. 2009)………………………………………………………………………....18

*Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017)………………………………………………..11

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)…………………11, 16

*City of Burlington v. Dague*, 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992)…………………………………………………………………..………31

*Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)……………………………………………..………24

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997)………………14

*Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015)……………………………………………………………………………26

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986)…………………………19

*Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004)………………………...20

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)……………………26

*Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991)……………………………………………17, 30

*Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)………………30, 31

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)…………………………..28

*Fustok v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989)………....19

*Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011)…………………………………………………………………………27

*Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018)……....28

*Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007)…………………………………………………………………..12, 14

*Hensley v. Eckerhart*, 461 U.S. 424, 433(1983)…………………………………30

*Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)………………………………………………………...11

*Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987)………………32

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)……..……….31

*LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006)…………………………………………………………………...……17

*MAI Systems Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir.1993)…....26

*ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 14 (D. Haw. Oct. 19, 2017 )..…………………………………………….....32-33

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005)……………………………………………..20

*Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996)……………….31

*Parr v. Club Peggy, Inc.*, 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012)………………………………………………………………………………19

*Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)…………...23

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987)………………………………………..……………………………………..31

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)………………10

*PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002)………………………………………………………………………………20

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017))…………..28

*Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D.Cal.2001)………………………………………………………….……....23

*TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18 (9th Cir. 1987)……..19, 22

*Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir.  2000)……....17

*Walden v. Fiore*, 571 U.S. 277, 284 (2014)…………………………………………..11

*Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002)…………………..32

**Other Authorities**

CLOUDFLARE TRANSPARENCY REPORT,
https://www.cloudflare.com/transparency/ [last accessed on Sept. 4, 2019] ……8

http://www.apkmirrordownload.com/dmca-policy/  [last accessed on Sept. 2, 2019]. …………………………………………………………………………………13

http://www.apkmirrordownload.com/privacy-policy/ [last accessed on Sept. 2, 2019] …………………………………………………………………………………15

https://www.apkmirrordownload.com/apk/movie-play-box-1-1-1-110-apk/ [last accessed on September 2, 2019] …………………………………………………27

https://www.apkmirrordownload.com/apk/torrent-movie-downloader-2019-1-3-1-15-apk/ [last accessed on September 2, 2019]…………………………………….27

https://www.apkmirrordownload.com/apk/hd-movies-free-2019-1-1-2-apk/ [last accessed on Sept. 2, 2019]………………………………… …………………27

## I.    <u>INTRODUCTION</u>

Plaintiffs Hunter Killer Productions, Inc., TBV Productions, LLC, Venice PI, LLC, Bodyguard Productions, Inc., and LHF Productions, Inc. ("Plaintiffs") are owners of the copyrights for the motion pictures ("Works"), respectively shown in Exhibit "1" [Doc. #1-1] to the Complaint [Doc. #1].   Plaintiffs produced and marketed these Works at great expense and are currently selling the Works to consumers throughout the United States ("US") including Hawaii.   *See* Complaint [Doc. #1] at ¶16.   Accordingly, Plaintiffs' production and marketing of the Works share little resemblance to entities hiding in the shadows, buying the copyrights to pornographic films (without creating anything), and seeking settlements from crowds of John Does embarrassed that they were "caught" downloading tawdry titles. *See AF Holdings, LLC v. Does* 1–1058, 752 F.3d 990, 992 (D.C. Cir. 2014) (describing the "modus operandi" of a copyright troll).   In the contrary, Plaintiffs filed this action for permanent injunctive relief and damages against Defendant Nghi Phan Nhat ("Defendant") among others for intentional inducement and contributory copyright infringement in violation of the US Copyright Act, 17 U.S.C. 101 §§ et. seq, false description in violation of 15 U.S.C. §1117 and Unfair Competition and deceptive trade practices per Hawaii state law on April 3, 2019. [Doc. #1].   Plaintiffs voluntarily withdraw their Lanham Act claims and claims under Hawaii state law

for false description, unfair competition and deceptive trade practices against Defendant.

As asserted in the Complaint, Defendant distributed the BitTorrent protocol apps Show Box app and Popcorn Time from his website apkmirrordownload.com ("website"). *See* Complaint at ¶¶124-125. When Plaintiffs became aware that individuals in Hawaii and the US were using apps obtained from Defendant's website to infringe their motion pictures, Plaintiffs' counsel served notices pursuant to 17 U.S.C. § 512(c)(3)(A) of the Digital Millennium Copyright Act ("DMCA") upon Defendant's domain registrar Namesilo, LLC ("Namesilo") and provider CloudFlare, Inc. ("CloudFlare"). *See* Exhibits "1" and "2". Per CloudFlare's policy, CloudFlare notified Defendant of Plaintiffs' notice. *See* CLOUDFLARE TRANSPARENCY REPORT, https://www.cloudflare.com/transparency/ [last accessed on Sept. 4, 2019] ("It is our policy to notify our customers of a subpoena or other legal process requesting their customer…information before disclosure of information, whether that legal process comes from the government or private parties involved in civil litigation, unless legally prohibited.") Namesilo and CloudFlare subsequently provided Defendant's identification information to Plaintiffs' counsel. *See* Decl. of Counsel at ¶2. On March 12, 2019, Plaintiffs' counsel sent a notice to Defendant requesting him to cease and desist promoting and distributing Show Box app and Popcorn Time and to pay some of Plaintiffs'

damages.   *See* Complaint at ¶126, Exhibit "8".   Defendant ignored Plaintiffs' counsel's communications and continued to distribute Popcorn Time and Show Box app on his website. Id. Accordingly, Plaintiffs filed the Complaint.   Plaintiffs' counsel sent a copy of the Complaint, Summons and Scheduling Order along with a waiver of service to Defendant on April 3, 2019.   *See* Decl. of Counsel at ¶3. However, Defendant continued to promote and distribute Popcorn Time and Show Box app on his website.  Id.  After receiving leave of this Court to serve Defendant by mail, Plaintiffs' counsel sent a copy of the Complaint, Summons and Scheduling Order to Defendant by FedEx. *See* Decl. of Stephanie Kessner [Doc. #20] at ¶3. When Defendant finally begin responding to Plaintiffs' communications, incredibly he faulted Plaintiffs' counsel for sending the notice as an attachment to the email. ("You attach a PDF file, everyone easily disregards that email because the virus status is attached to the email, and I easily forget that email…")  Exhibit "3".  When Defendant failed to answer the Complaint, the Plaintiffs filed a Request for Entry of Default [Doc. #29] which was granted.   Prior to the present motion, Plaintiffs' counsel sent a copy of the entry of default to Defendant and advised him of Plaintiffs' intention to file the present motion for default judgment, but Defendant has not replied.  Decl. of Counsel at ¶5.  All the while, Defendant has continued to promote new movie piracy apps available on his website via the social media website Twitter under the handle "@apkmirrordl" sometimes numerous times a day.  Id. at ¶¶6-7.

## II.   SUBJECT MATTER JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this action pursuant to 17 U.S.C. §§ 101, et. seq., 28 U.S.C. § 1331, and 28 U.S.C. § 1338(a).  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(a).

## III.   PERSONAL JURISDICTION

A.  The Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), the so-called federal long-arm statute.

1.  Plaintiffs' claims against Defendant arise under Federal Law.

Rule 4(k)(2) permits a federal court to exercise personal jurisdiction over a defendant if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction," and "exercising jurisdiction is consistent with the United States Constitution and laws." Rule 4(k)(2) imposes three requirements:

> First, the claim against the defendant must arise under federal law. Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction. Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006) (citations omitted).

Defendant is a resident of Vietnam, and thus not subject to the personal jurisdiction of any state court of general jurisdiction.  Complaint at ¶120.  Plaintiffs' claims for Inducement and Contributory Copyright Infringement against Defendant arise under Federal Law.

2.   Defendant has sufficient minimum contacts with the US that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

Due Process requires that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotations omitted).   A court has specific jurisdiction over a nonresident defendant when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." *Daimler*, 571 U.S. at 127 (citation omitted); *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, ___ U.S. ___, 137 S. Ct. 1773, 1779-80 (2017) (alteration in original).

There are two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Id*.   Plaintiffs do not assert general jurisdiction.   The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-

11

related conduct must create a substantial connection with the forum State." *Id*. This requires the relationship to "arise out of contracts that the 'defendant *himself* creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id*. at 284-85.

To analyze specific jurisdiction, the Ninth Circuit has articulated a three-part test to evaluate the sufficiency of a defendant's minimum contacts within the forum:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotations omitted).

In *Holland America Line v. Wärtsilä North Amer.*, the Ninth Circuit concluded that "[t]he the due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [Defendant] … and the forum state, we consider contacts with the nation as a whole." *Holland America Line v. Wärtsilä North Amer*, 485 F.3d 450, 462 (9th Cir., 2007).  Accordingly, Plaintiffs will address

the three-part test of *Axiom Foods, Inc.* with respect to the United States as the forum.

(i) The defendant purposefully directs his activities toward the US and purposefully avails himself of the privileges of conducting activities in the US.

The Defendant registered his domain with the US company Namesilo. Complaint at ¶122.  The Defendant uses the US company CloudFlare for the hosting of his website.  Id. at ¶13, Decl. of Counsel at ¶2.   Defendant uses the US social media platform Twitter to promote his website.  Id. at ¶¶6-7.  Defendant uses the US company PayPal to receive advertisements funds.  Id. at ¶4, Exhibit "9".  Defendant uses email service of the US company Google for email communications.  Id. Defendant's website is in English, not Vietnamese.  The Defendant takes advantage of provisions of US law on his website – namely the protections of the DMCA.  *See* http://www.apkmirrordownload.com/dmca-policy/ [last accessed on Sept. 2, 2019]. The United States is the second highest country from which traffic to his website originates.   *See* Complaint at  ¶123.   According to the website spyfu.com, Defendant's website is receiving 14,600 clicks per month and $927 in advertisement revenue. *See* Decl. of Counsel at ¶9.

When registering his domain with the Registrar Namesilo, Defendant agreed to jurisdiction and laws of Arizona.  Id. at ¶10.  When registering for service with Cloudflare, Defendant agreed to jurisdiction and laws of California. Id. at ¶11.

Under general contract principles, a forum selection clause may give rise to waiver of objections to personal jurisdiction, provided that the defendant agrees to be so bound. *See Holland Am. Line Inc. v. Wartsila N.A., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007) (internal citations omitted).   Although these agreements provided for Courts in Arizona and California, the focus on the test of the Federal Long Arm statute is the United States as a whole as the forum.   Moreover, these contacts are not the type of continuous contacts such as a place of incorporation and principal place of business that would constitute general jurisdiction with one of these states, thereby ruling out the applicability of the Federal Long Arm statute.

Defendant's website is highly interactive.   In *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, the Ninth Circuit addressed the application of the purposeful availment principle to websites and stated that "operation of an interactive, commercial website is often sufficient" to establish personal jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).   *Cybersell* defined an interactive site as one that allows users to "exchange information with the host computer." *Id.* at 418.   As alleged in the Complaint, Defendant purposely directs his electronic activity into the United States and targets and attract a substantial number of users in the United States and, more particularly, Hawaii.   Complaint at ¶12.   In his privacy policy, Defendant admits to using cookies and/or web beacons to collect data in the ad serving process.   Decl. of Counsel at ¶12,

14

http://www.apkmirrordownload.com/privacy-policy/ [last accessed on Sept. 2, 2019]. Exhibit "5" illustrates some of the interactive features of Defendant's website and how it is directed towards the US. Advertisements including "a free month of Netflix" and "Metlife us app" (emphasis added) among other are displayed. Exhibit "5".

As alleged in the Complaint, the software application Show Box app and Popcorn Time can be downloaded from Defendant's website. Complaint at ¶¶124-125.

(2) Plaintiffs' claims arise out of or relates to the Defendant's forum-related activities.

Plaintiffs' claims arise from Defendant's promotion and distribution of Show Box app and Popcorn Time from the website that he registered with a US company (Namesilo), promotes via a US social media platform (Twitter), hosts via the US company (Cloudflare), collects advertisements and deposits payments (of nearly $1000/month) into an account of the US company (PayPal). Decl. of Counsel at ¶¶2, 9.

(3) The exercise of jurisdiction comports with fair play and substantial justice. "The plaintiff bears the burden of satisfying the first two prongs. If the plaintiff does so, then the burden shifts to the defendant to prove that exercise of jurisdiction would not be reasonable." *Mavrix Photo* at 1228 (9th Cir. 2011) (citing

*Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). Accordingly, it is not Plaintiffs' burden to address this prong. However, Plaintiffs respectfully submits that since Defendant has already consented to be haled into US courts in California and Arizona, there is no further burden for Defendant to be haled into a Court in Hawaii. Rather, the burden is *less* because the distance between Vietnam and Hawaii is 10,096 km while the distance between Vietnam and California and Arizona is 12,466 km and 13,288 km respectively. *See* Decl. of Counsel at ¶14.

In summary, nearly all steps of Defendant's website activities are conducted in the United States, from registering the domain, hosting, advertisements, money collection and money depositing. The only step not conducted in the United States is when Defendant transfers his money from PayPal to his account in Vietnam. Plaintiffs are not the only contacts between the Defendant and the United States such as in *Walden*. Accordingly, personal jurisdiction per the Federal long arm statute is appropriate.

## IV.    <u>DEFENDANT'S DEFAULT ENTERED</u>

Pursuant to the Order Granting Plaintiffs' Second *Ex Parte* Motion for Order Permitting Clerk to perform foreign mailing [Doc. #17], Defendant was served by delivering a copy of the Summons, Scheduling Order, Complaint and a Vietnamese Machine Translation thereof by FedEx on June 5, 2019. *See* Decl. of Stephanie

16

Kessner [Doc. #20] at ¶3.  Accordingly, Defendant's responsive pleading was due on June 26, 2019.  When Defendant failed to appear, plead, or otherwise defend, Plaintiffs filed a Rule 55(a) request for the entry of default on July 8, 2019 [Doc. # 26], which was promptly granted by the Court. [Doc. #29].

## V.   **ARGUMENT**

The Complaint alleges claims for Intentional Inducement of Streaming and Torrenting and Contributory Copyright Infringement in violation of the United States Copyright Act, 17 U.S.C. 101 §§ et. seq.

## A.   **Copyright Infringements Have Been Established**

A Plaintiff asserting a copyright infringement claim must demonstrate: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Pubs., Inc. v. Rural Telephone Service Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991); *LGS Architects, Inc. v. Concordia Homes of Nevada*, 434 F.3d 1150, 1156 (9th Cir. 2006).  In the Complaint, Plaintiffs alleged that they own the copyrights for the Works and includes the Copyright Registrations numbers issued by the Register of Copyrights. Complaint at ¶16, Exhibit "1" [Doc. #1-1] of the Complaint. "Registration is *prima facie* evidence of the validity of a copyright." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 488–89 (9th Cir.  2000)(citing 17 U.S.C. § 410(c) (1994)).  Plaintiffs' investigator confirmed that each of their motion pictures can be downloaded by the

Show Box app. *See* Decl. of Daniel Arheidt [Doc. #1-10] at ¶¶23, 25-26 and 28. That suffices to establish underlying direct infringement. *See, e.g., Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 150 n.16 (S.D.N.Y. 2009) ("Courts routinely base findings of infringements on the actions of plaintiffs' investigators.").

In Exhibits 8-9 [Docs. ##1-8, 1-9] of the Complaint, Plaintiffs allege direct infringements of the motion pictures *The Hitman's Bodyguard* and *Hunter Killer* in Hawaii via the Show Box app. In Exhibit 6 [Doc. #1-6] of the Complaint, Plaintiffs allege direct infringements of the motion picture *London Has Fallen*. *See* Complaint [Doc. #1] at ¶208. Because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendant induced and contributed to infringement of Plaintiffs' copyrights and that his infringements were both knowing and willful. [Doc. #1, at ¶¶ 46-47]. Finally, Defendant himself admitted to being behind the website. *See* Exhibit "3" ("My website only sharing free app get from other website and will remove it if authors send request") and Exhibit "4" ("What's you want? I'm ready remove all content you request.)

## B.   <u>Default Judgment is Appropriate</u>

Despite being served by FedEx and discussing this case with Plaintiffs' counsel, Defendant has failed to appear. *See* Exhibits 3-4. As a result, Plaintiffs requested and received an entry of default [Doc. #29]. Because Defendant has chosen to default instead of defending, he has admitted the truth of the allegations

asserted in the Complaint. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d915, 917–18

(9th Cir. 1987) ("The general rule of law is that upon default the factual allegations

of the complaint, except those relating to the amount of damages, will be taken as

true."). While the court may conduct a hearing to determine damages, *See* Fed. R.

Civ. P. 55(b)(2), the court can rely on evidence submitted by Plaintiff. *See Fustok*

*v. ContiCommondity Servs., Inc.*, 873. F.2d 38, 40 (2d Cir. 1989).

Plaintiffs now respectfully requests that this Court enter a default judgment

against Defendant. When evaluating whether to grant a judgment by default, courts

consider a number of factors, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.1986); *see also Parr v. Club*

*Peggy, Inc.,* 2012 U.S. Dist. LEXIS 24758 (D. Haw. Jan. 19, 2012). All of these

factors support the conclusion that Plaintiffs are entitled to a default judgment.

### 1. The possibility of prejudice to Plaintiff

Plaintiffs would certainly be prejudiced if the Court declines to enter default

judgment, for it would leave Plaintiffs without any remedy against Defendant, who

has failed to even show up and contest this dispute. "If Plaintiff['s] motion for default

judgment is not granted, Plaintiff[] will likely be without other recourse for

recovery." *PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Despite the fact that Defendant doesn't deny that Plaintiffs are entitled to an award of statutory damages, attorneys' fees, costs, and a permanent injunction, if this Court refuses to enter a default judgment against him, Plaintiffs would be left unable to seek damages or even to prevent Defendant from brazenly continuing to induce and contribute to infringements of Plaintiffs' copyrights by promoting and distributing the Show Box app and Popcorn Time. Indeed, a refusal would entirely frustrate both the Copyright Act and the civil justice system.

## 2. & 3. The merits of Plaintiffs' substantive claims and the sufficiency of the Complaint

To prevail on a claim for contributory copyright infringement, Plaintiffs must establish both ownership of a valid copyright and that Defendant intentionally induced, caused or materially contributed to direct infringement by others. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930, 125 S. Ct. 2764, 2776, 162 L. Ed. 2d 781 (2005); *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). Liability for contributory copyright infringement attaches to defendants with "actual knowledge and those who have reason to know of direct infringement." 357 F.3d at 1076.

Plaintiffs have adequately pled their claim for contributory copyright infringement against Defendant.  In the Complaint, Plaintiffs alleged that they own

the copyright for the Works and included valid Certificate of Copyright Registration numbers issued by the Register of Copyrights. *See* Complaint at ¶16; Exhibit "1" to Complaint [Doc. #1-1].  Moreover, because the factual allegations of the Complaint are deemed true, Plaintiffs have conclusively established that Defendant has induced torrenting and streaming of Plaintiffs' Works, materially contributed to infringement of Plaintiffs' Works, and that his infringements are both knowing and willful by his distribution and promotion of Popcorn Time and the Show Box app. Id. at ¶¶46-47. Finally, Defendant himself admitted to being the operator of the website for promoting and distributing the Show Box app and Popcorn Time.  *See* Exhibits 3-4. Defendant has no safe harbor because (1) he placed the Show Box app and Popcorn Time on his website himself (Exhibit 4) and (2) he did not have (and still does not have) a DMCA agent.  *See* Decl. of Counsel at ¶15.   Nonetheless, Defendant did not remove the links to Show Box app and Popcorn Time after receiving DMCA notifications from CloudFlare and Plaintiffs' counsel.  Id. at ¶¶2-3.  Accordingly, Defendant not only *should have known* that he was contributing to infringement of Plaintiffs' Works, but he had actual knowledge of the infringement.

### 4.   The sum of money at stake in the action

Plaintiffs are seeking an award of statutory damages of $150,000 for Defendant's willful contributory infringements for the five Works.  The amount of

money at stake relative to the cost of continued litigation makes the matter appropriate for default judgment.

### 5.   The possibility of a dispute concerning the material facts

There is no possibility of a dispute arising as to any material fact in this case. Because of Defendant's default, this Court must take the factual allegations asserted in the Complaint as true. *See TeleVideo Sys., Inc. v. Heidenthal, supra*, 826 F.2d at 917–18.  Moreover, Defendant has not made any attempt to contest those allegations (or for that matter, even bothered to appear).  Finally, Defendant has admitted to being the operator of the website.  *See* Exhibits 3 and 4.

### 6.   Whether the default was due to excusable neglect

Defendant's default is not the result of excusable neglect. As discussed above, Defendant was served a copy of the Complaint by FedEx on June 5, 2019.  *See* Decl. of Stephanie Kessner [Doc. #20] at ¶3.   Defendant contacted Plaintiff's counsel and conceded that he was the operator of the website, but faulted Plaintiffs' counsel for sending his notice as an attachment to an email.  *See* Exhibit 3.  Defendant replied angrily when Plaintiffs' counsel attempted to schedule a Rule 26(f) conference with him.  Exhibit "4" ("What's you want? ...").  Plaintiffs' counsel sent Defendant a copy of the Entry of Default.  Decl. of Counsel ¶5.  Despite not being required to by Rule 55(b)(2) of the *Federal Rules of Civil Procedure*, Plaintiffs have served a copy of this Motion on Defendant.

Thus, on several occasions, Defendant has been provided with notice of this proceeding and the risks for failing to appear. Accordingly, Defendant's decision to neither appear nor defend "cannot be attributed to excusable neglect." *Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal.2001) (reasoning that excusable neglect is not present when Defendant "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

### 7. The policy considerations

While it is true that "cases should be decided upon their merits whenever reasonably possible," Defendant's failure to respond to this lawsuit makes achieving a ruling on the merits entirely unfeasible. *See Pena v. Seguros La Comercial*, S.A., 770 F.2d 811, 814 (9th Cir. 1985). Accordingly, the only way for this case to reach a resolution of any kind is to award Plaintiffs default judgment. Absent a judgment by default, Plaintiffs will not be made whole and have no mechanism to prevent further inducements and contributory infringements of their Works by this same Defendant. In summary, as demonstrated above, all of the factors weigh in favor of granting Plaintiffs a default judgment against Defendant.

## VI. <u>Statutory Damages for Willful Copyright Infringement</u>

Plaintiff elects to receive statutory damages of $150,000 for Defendant's willful inducements and contributions of infringements for the five Works. Pursuant

23

to 17 U.S.C. § 504(c), "A plaintiff may elect statutory damages regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Indus., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation omitted). Plaintiff is entitled to an award of damages of no less than $750.00 per work and up to $30,000.00 per work for a non-willful violation, and for a willful infringement, no more than $150,000.00 per work for Defendant's violations of the Copyright Act. 17 U.S.C. § 504(c)(1) and (2).

In similar cases in the Ninth Circuit where a Defendants have contributed to infringements by distributing BitTorrent client apps, Courts have not hesitated to award statutory damages of $30,000 per Work or higher.  In *Columbia Pictures, et. al v. Justin Bunnell et. al*, the Central District of California awarded the Plaintiff a total judgment in the amount of $110,970,000 ($30,000 per Work) against a Defendant for willful inducement of copyright infringement, contributory copyright infringement and vicarious copyright infringement.  *See Columbia Pictures, et. al v. Justin Bunnell et. al*, 2:06-cv-01093-FMC-JCx, Doc. #409 (C.D. Cal.) ("*Bunnell*") (attached as Exhibit "6").  In *Bunnell*, the Defendant operated a website that enabled users to locate and download torrent files.  However, a separate BitTorrent client program had to be used to actually watch the motion pictures associated with the downloaded torrent files.  *See Burnell,* 245 F.R.D. 443, 445 (C.D. Cal. 2007).  In

that sense, the website operated by Defendant in the present case is <u>worse</u> than that of the Defendant in *Bunnell* because the BitTorrent Clients Show Box app and Popcorn Time distributed by Defendant do not require a separate client program. Rather, users in Hawaii and the United States can merely search for a title in the search bar and immediately download or stream Plaintiffs' motion pictures. *See* Complaint [Doc. #1] at ¶136.

In *Lions Gate Films Inc. v. Does*, the Central District of California awarded $150,000 in statutory damages jointly against Defendants for willful infringement of the motion picture *Expendables 3* by distributing torrent files from the website limetorrents.com among other websites. *See Lions Gate Films Inc. v. Does*, No. 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240, at 3, 6 (C.D. Cal. Aug. 8, 2014), Id. at Doc. 68 (attached as Exhibit "7").

Here similarly, Defendant continued to distribute Popcorn Time and Show Box app despite notifications from Plaintiffs' Counsel and CloudFlare. As explained below, Defendant continues to distribute movie piracy apps in wake of this lawsuit. Accordingly, his conduct is willful. Therefore, the willful amount of statutory damages (total of $150,000 for the five Works) is appropriate.

## VII.   <u>Plaintiffs are Entitled to Injunctive Relief.</u>

Plaintiffs requests that the Court grant its request for injunctive relief, permanently barring Defendant from inducing and contributorily infringing

Plaintiffs' copyrights in the Works and ordering the Defendant's domain registrar Namesilo and provider CloudFlare to cease facilitating access to Defendant's domain and any or all domain names and websites through which Defendants engaged in the distribution and promotion of the Show Box app.  The Court is authorized to grant permanent injunctive relief to prevent or restrain copyright infringement.  *See* 17 U.S.C. §502(a) ("Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28, grant temporary and final injunctions on such terms as it may deem reasonable to prevent or refrain infringement of a copyright.")

A Plaintiff is required to satisfy the following four-factor test to obtain a permanent injunction: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1088 (9th Cir. 2015). "As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Systems Corp. v. Peak Computer, Inc.,* 991 F.2d 511, 520 (9th Cir. 1993).

Despite being served the Complaint for this litigation and communications with Plaintiffs' counsel, Defendant continues to promote and distribute piracy apps on his website.  For example, Defendant is currently distributing copies of the piracy app "Movie Play Box" at the website https://www.apkmirrordownload.com/apk/movie-play-box-1-1-1-110-apk/ [last accessed on September 2, 2019].  Defendant is currently distributing the piracy app "Torrent Movie Downloader".  Notably, he apparently put this app on the website and made it available to distribute to the public on August 25, 2019 – well after he was aware of the current litigation. https://www.apkmirrordownload.com/apk/torrent-movie-downloader-2019-1-3-1-15-apk/ [last accessed on September 2, 2019]. Defendant is also currently distributing the software piracy app "HD Movies Free" at the website https://www.apkmirrordownload.com/apk/hd-movies-free-2019-1-1-2-apk/ [last accessed on Sept. 2, 2019].  The Defendant also placed this app on his website after being notified of the present litigation.  Defendant is also distributing the software app Movieflix as discussed previously.  Id. at ¶7.

In copyright infringement cases, the Ninth Circuit requires a plaintiff to "demonstrate a likelihood of irreparable harm as a prerequisite for injunctive relief, whether preliminary or permanent." *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 998 (9th Cir. 2011).  Unless this Court grants an injunction, Defendant

27

will continue to be the source for other piracy apps that will be used by individuals in Hawaii, throughout the United States, and the world to reproduce Plaintiffs' Works in violation of Plaintiffs' exclusive rights to publicly perform, distribute and make copies of their Works. Granting an injunction is the only way to prevent further infringement.

## VIII. **Plaintiffs are Entitled to Attorney's Fees and costs.**

The Copyright Act states that a district court "may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. The Supreme Court has provided the following nonexclusive list of factors for district courts to consider in a making a fee determination under the Copyright Act: (1) frivolousness; (2) motivation; (3) "objective unreasonableness (both in the factual and in the legal components of the case)"; and (4) "the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994). The Ninth Circuit has held that courts may also consider these factors: "[T]he degree of success obtained in the litigation, the purposes of the Copyright Act, and 'whether the chilling effect of attorney's fees may be too great or impose an inequitable burden on an impecunious [litigant].'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1037 (9th Cir. 2018) (quoting *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 675 (9th Cir. 2017)). Furthermore, the Ninth Circuit has "emphasized that district courts should 'accord

substantial weight to' the 'reasonableness of [the] losing party's legal and factual arguments.'" *Id.*

Plaintiffs assert that the following factors support granting its motion for attorney's fees: (1) Plaintiffs' degree of success in the litigation; (2) deterrence; (3) furtherance of the purposes of the Copyright Act; and (4) the objective unreasonableness of the losing party's (Defendant's) litigation conduct.

## A. The Degree of Success in the Litigation

In this case, Plaintiffs' suit against Defendant was a total success. Plaintiffs alleged that Defendant willfully violated its exclusive rights under the Copyright Act. [Doc. #1 at ¶¶172-204]. Defendant has defaulted and ceased distributing and promoting the Show Box app and Popcorn Time.

## B. Deterrence

The interest of deterrence weighs in favor of granting Plaintiffs' motion for attorney's fees. Defendant continued to distribute the movie piracy applications Popcorn Time and the Show Box app after receiving notifications from Plaintiffs' counsel and CloudFlare and continues to distribute and promote movie piracy apps *now*. *See* Decl. of Counsel at ¶¶3, 6-7, and 16-18. Accordingly, the interest of deterrence weighs in favor of fee-shifting.

## C. The Goals of the Copyright Act

The Copyright Act is intended to "'promote the Progress of Science and useful Arts' by 'assuring authors the right to their original expression' and 'encouraging others to build freely upon the ideas and information conveyed by a work.'" *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 349-50 (1991)). Defendant's distribution of Popcorn Time and Show Box app results directly in infringements of Plaintiffs' Works. Thus, Defendant's conduct frustrates the goals of the Copyright Act.

## D. Objective Unreasonableness

The objective unreasonableness of Defendant's conduct also supports fee-shifting. Defendant's conduct forced Plaintiffs to file the present motion for default. Defendant continues to promote and distribute movie piracy apps. The unreasonableness of Defendant's conduct during this litigation supports awarding attorney's fees to Plaintiff.

## E. Calculation of Attorney's Fees

Reasonable attorney's fees are generally based on the traditional "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fisher v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Second, the court must decide whether to adjust the lodestar amount based on an evaluation of the

factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. See *Fisher*, 214 F.3d at 1119 (citation omitted). The factors the Ninth Circuit articulated in *Kerr* are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. The subsumed factors taken into account in the "lodestar" calculation are: "'(1) the novelty and complexity of the issues, (2) the special skill and experience of counsel, (3) the quality of representation, . . . (4) the results obtained,' *Morales v. City of San Rafael*, 96 F.3d 359, 364 n.9 (9th Cir. 1996), and (5) the contingent nature of the fee agreement," *City of Burlington v. Dague,* 505 U.S. 557, 112 S. Ct. 2638, 2643, 120 L. Ed. 2d 449 (1992). Once calculated, the "lodestar" is presumptively reasonable. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987); see also *Fisher*, 214 F.3d at 1119 n.4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

Plaintiff requests the following lodestar amount for attorneys' fees it incurred in this case as detailed in the attached Declarations of Counsel with regards to Defendant:

KERRY CULPEPPER     46.83 hours @ $250/hour =       $11,707.50

Additionally, Plaintiff seeks to recover the Hawaii General Excise Tax related to those fees in the amount of $518.64 and taxable costs of $2639.08.

The taxable costs requested for Defendant include the fee to serve the complaint and one quarter of the $400 filing fee for filing the complaint. Particularly, the original complaint included 5 Defendants, but Plaintiffs asserted joint liability against Defendants Pebblebridge Technologies, LLP and Vishnudath Reddy Mangilpudi. Therefore, Plaintiff is only apportioning 1/4 of the filing fee to Defendant.

In determining whether an hourly rate is reasonable, the Court considers the experience, skill, and reputation of the attorney requesting fees. See *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). The reasonable hourly rate should reflect the prevailing market rates in the community.  Although attorneys are required to provide evidence that the rate charged is reasonable, *see Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987), this Court is better aware of the prevailing rates in the community, having had the opportunity to review fee requests of many attorneys.  In *ME2 Productions, Inc. v. Pumaras*, this Court

32

determined that a billing rate of $250 for Plaintiff's Counsel was consistent with the prevailing rates in the community. *See ME2 Productions, Inc. v. Pumares,* Civ. No. 1:17-00078 SOM-RLP, Doc. #42, at 18 (D. Haw. Oct. 19, 2017).

## IX. <u>Conclusion.</u>

Plaintiffs filed this lawsuit to protect their copyrighted movies from online piracy resulting from the Show Box app and Popcorn Time. It is undisputed that Defendant willfully and intentionally contributed to Plaintiffs' copyrights by distributing and promoting Popcorn Time and the Show Box app. Defendant's blatant disregard of copyright laws warrants a statutory award, not only to protect Plaintiffs' interests, but also to deter others from doing the same.

Accordingly, Plaintiffs respectfully request that the Court enter default judgment against Defendant and issue an award of statutory damages in the amount of $150,000, reasonable attorneys' fees in the amount of $11,707.50, Hawaii General Excise Tax related to those fees in the amount of $518.64 and taxable costs of $2639.08.

Additionally, Plaintiffs request that the Court permanently enjoin Defendant from directly and contributorily infringing Plaintiffs' copyrighted Works, and order Defendant's Registrar Namesilo, provider CloudFlare, and those in privity with Defendant and with notice of the injunction, including any Internet search engines, Web hosts, domain-name registrars, and domain name registries and/or their

administrators that are provided with notice of the injunction, from facilitating access to any or all domain names and websites through which Defendant engages in the distribution and promotion of the Show Box app or other software applications that induce and/or contribute to infringement of Plaintiffs' Works.

DATED: Kailua-Kona, Hawaii, September 6, 2019.

CULPEPPER IP, LLLC

/s/ Kerry S. Culpepper
Kerry S. Culpepper

Attorney for Plaintiffs