UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| HUNTER KILLER PRODUCTIONS, ET AL., <br><br> Plaintiffs, <br><br> vs. <br><br> QAZI MJUHAMMAD ZARLISH, ET AL.; <br><br> Defendants. | CIV. NO. 19-00168 LEK-KJM |

**ORDER: GRANTING PLAINTIFFS' OJECTIONS; REJECTING THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NGHI PHAN NHAT; AND REMANDING THE MOTION TO THE MAGISTRATE JUDGE**

On September 6, 2019, Plaintiffs Hunter Killer Productions, Inc.; TBV Productions, LLC; Venice PI, LLC; Bodyguard Productions, Inc.; and LHF Productions, Inc. ("Plaintiffs") filed their Motion for Default Judgment Against Defendant Nghi Phan Nhat ("Motion"). [Dkt. no. 37.] On November 7, 2019, the magistrate judge issued his findings and recommendation to deny the Motion ("F&R"). [Dkt. no. 46.] Before the Court is Plaintiffs' objections to the F&R ("Objections"), filed on November 20, 2019. [Dkt. no. 48.] The Court has considered the Objections as a non-hearing matter pursuant to Rule LR7.1(d) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, Plaintiffs'

Objections are hereby granted, the F&R is rejected, and Plaintiffs' Motion is remanded to the magistrate judge for further consideration.

## BACKGROUND

The relevant factual and procedural background of this case is set forth in the F&R and will not be repeated here. In the F&R, the magistrate judge concluded that subject-matter jurisdiction exists over the claims in this case, pursuant to 28 U.S.C. §§ 1331, 1338, and 17 U.S.C. § 101. [F&R at 4.] The magistrate judge, however, concluded that personal jurisdiction over Defendant Nghi Phan Nhat ("Nhat") is lacking and recommended that this Court deny Plaintiffs' Motion. [Id. at 4, 13.]

Because Plaintiffs completed service upon Nhat, the magistrate judge analyzed whether personal jurisdiction exists over Nhat based on the Fed. R. Civ. P. 4(k)(2),[1] which is often

---

[1] Rule 4(k)(2) states:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

2

referred as the federal long-arm statute. The magistrate judge concluded that Plaintiffs' claims arise under federal law, and Nhat is not subject to the jurisdiction of any state court of general jurisdiction because he is a resident of Vietnam. Thus, the magistrate judge's analysis focused on whether the exercise of personal jurisdiction over Nhat would comport with due process. [Id. at 3-5.]

Because Plaintiffs' position is that specific jurisdiction exists over Nhat and they do not assert general jurisdiction exists, the magistrate judge analyzed whether Nhat's contacts with the United States satisfy the Ninth Circuit's three-part test to determine whether a non-resident has sufficient minimum contacts with the forum. [Id. at 5-6 (citing Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006)).] The magistrate judge ultimately found that Plaintiffs failed to establish that Nhat either purposefully directed his activities toward the United States; [id. at 9-10;] or purposefully availed himself of the privileges of conducting business in the United States, [id. at 12]. Because Plaintiffs failed to establish the first prong of the three-part test, the magistrate judge declined to address the remaining prongs. [Id. at 13.]

In the Objections, Plaintiffs argue: 1) Nhat has sufficient minimum contacts with the United States because of

the operation of the website, apkmirrordownload.com ("APK Site"); 2) Nhat's contacts with both Hawai`i and the United States through the interactive nature of the APK Site and the Show Box software application ("Show Box app"), which is promoted and distributed on the APK Site, are sufficient to establish minimum contacts with the forum; 3) Plaintiffs' claims arise out of or relate to Nhat's forum-related activities; and 4) exercising jurisdiction over Nhat would be reasonable.

## **STANDARD**

This Court reviews a magistrate judge's findings and recommendations under the following standard:

> When a party objects to a magistrate judge's findings or recommendations, the district court must review de novo those portions to which the objections are made and "may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); see also United States v. Raddatz, 447 U.S. 667, 673 (1980); United States v. Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) ("[T]he district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise.").
>
> Under a de novo standard, this Court reviews "the matter anew, the same as if it had not been heard before, and as if no decision previously had been rendered." Freeman v. DirecTV, Inc., 457 f.3d 1001, 1004 (9th Cir. 2006); United States v. Silverman, 861 F.2d 571, 576 (9th Cir. 1988). The district court need not hold a de novo hearing; however, it is the court's obligation to arrive at its own independent conclusion about those portions of the magistrate judge's findings or recommendations to which a party objects.

4

> United States v. Remsing, 874 F.2d 614, 616 (9th Cir. 1989).

Muegge v. Aqua Hotels & Resorts, Inc., Civil 09-00614 LEK-BMK, 2015 WL 4041313, at *2 (D. Hawai`i June 30, 2015) (alteration in Muegge) (some citations omitted).

## DISCUSSION

### I. Personal Jurisdiction

The magistrate was correct that Plaintiffs' claims arise under federal law and that Nhat is not subject the jurisdiction of any state court in this country. See F&R at 5.[2] Plaintiffs filed proof that Nhat was served with the Complaint, [filed 4/3/19 (dkt. no. 1),] and Summons, with a Vietnamese translation, on June 5, 2019. See Letter to the Clerk's Office from Plaintiffs' counsel, filed 5/29/19 (dkt. no. 19) (transmitting a package with the documents for service on Nhat and a prepaid FedEx envelope); Decl. of Stephanie Kessner ("Kessner Decl."), filed 6/10/19 (dkt. no. 20) (confirming

---

[2] The Complaint alleges:

> Plaintiffs bring this action under: (a) the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101, et seq. (the "Copyright Act") and allege that Defendants are liable for direct and contributory copyright infringement in violation of 17 U.S.C. §§ 106 and 501; (b) the Lanham Act of 1946, as amended, 15 U.S.C. §§ 1051, et seq. . . .

[Complaint at ¶ 2.] The Complaint also alleges Nhat "is a resident of Haiduong, Vietnam." [Id. at ¶ 120.]

5

service of the FedEx package on Nhat).  Thus, under the federal long-arm statute, the only disputed issue before this Court is whether "exercising jurisdiction is consistent with the United States Constitution and laws."  See Fed. R. Civ. P. 4(k)(2)(B).  In other words, would "exercising jurisdiction [over Nhat] comport[] with due process?"  See Hydentra HLP Int'l Ltd. v. Sagan Ltd., 783 F. App'x 663, 665 (9th Cir. 2019) (citing Holland Am. Line Inc. v. Wartsila N. Am., Inc., 485 F.3d 450, 461 (9th Cir. 2007)).

> The due process analysis under the third part of the federal long-arm statute "is nearly identical to traditional personal jurisdiction analysis," [Holland Am. Line Inc., 485 F.3d] at 462, which requires:
>
> > (1) The non-resident defendant must **purposefully direct his activities** or consummate some transaction with the forum or resident thereof . . . ; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.
>
> Mavrix [Photo, Inc. v. Brand Techs., Inc.], 647 F.3d [1218,] 1227–28 [(9th Cir. 2011)] (emphasis in original) (quotation omitted).  The key difference under the federal long-arm statute as compared to traditional personal jurisdiction analysis is that, "rather than considering contacts between the [defendant] and the forum state, we consider contacts with the nation as a whole."  Holland Am. Line Inc., 485 F.3d at 462.

Id. (some alterations in Hydentra HLP).  The plaintiff has the burden of proof as to the first two requirements.  Cf. Morrill

6

v. Scott Fin. Corp., 873 F.3d 1136, 1142 (9th Cir. 2017) (stating the burden of proof for the virtually identical factors in the specific jurisdiction analysis). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." Id. (citation and internal quotation marks omitted).

  A. **Purposeful Direction**

    The purposeful direction analysis has been equated with the "effects test" described in Calder v. Jones, 465 U.S. 783 (1984). Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp., 905 F.3d 597, 605 (9th Cir. 2018) "Under the Calder effects test, purposeful direction exists when a defendant allegedly: (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Id. at 604 n.3 (citation and internal quotation marks omitted).

  1. **Intentional Act**

    In the context of the purposeful direction analysis, "[a]n intentional act is one 'denot[ing] an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended.'" Morrill, 873 F.3d at 1142 (some alterations in Morrill) (quoting Washington Shoe Co. v. A-Z Sporting Goods, Inc., 704 F.3d 668,

7

673-74 (9th Cir. 2012)).³ The Complaint alleges the following facts: Nhat operates the APK Site; [Complaint at ¶ 121;] the APK Site includes a page where the Show Box app is available to be downloaded; [id. at ¶ 124;] on March 12, 2019, Plaintiffs' counsel sent notices regarding the download page on the APK Site; [id. at ¶ 126;] and, as of March 28, 2019, the APK Site was still active and was still distributing the Show Box app, [id.]. Plaintiffs presented evidence that the APK Site continued to promote and distribute the Show Box app through May 27, 2019. See Motion, Decl. of Counsel ("Culpepper Decl.") at ¶ 3.

As noted by the magistrate judge, Plaintiffs obtained an entry of default against Nhat on July 9, 2019. [F&R at 4 (citing ECF No. 29).] In light of the entry of default, all the Complaint's factual allegations must be accepted as true, except for the allegations regarding the amount of Plaintiffs' damages. See Yoo v. Arnold, 615 F. App'x 868, 870 (9th Cir. 2015) (citing TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917–18 (9th Cir. 1987)). Based on the allegations cited *supra*, which are assumed to be true for purposes of the Motion, this Court finds

---

³ Washington Shoe has been abrogated as to the "individualized targeting" theory. Axiom Foods, Inc. v. Acerchem Int'l, Inc., 874 F.3d 1064, 1070 (9th Cir. 2017). The "individualized targeting" theory does not apply in this case because the Complaint does not allege any Plaintiff is a Hawai`i resident.

8

that Nhat committed an intentional act for purposes of the Calder effects test.

### 2. Expressly Aimed at the Forum

> [T]wo factors are considered in determining whether an action is expressly aimed at the forum state:
>
> > (1) First, the relationship must arise out of contacts that the defendant **himself** creates with the forum State. . . . Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated.
> >
> > (2) Second, our "minimum contacts" analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there.

Morrill, 873 F.3d at 1143 (emphasis and some alterations in Morrill) (quoting Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014)).  However, because the purposeful direction analysis is being conducted in the context of the federal long-arm statute, Nhat's contacts with the United States as whole – not just his contacts with the State of Hawai`i – must be considered.  See Holland Am. Line Inc., 485 F.3d at 462.

Plaintiffs have submitted evidence that the APK Site is registered with Namesilo, LLC ("Namesilo") and hosted by CloudFlare, Inc. ("CloudFlare"), both of which are companies located in the United States.  See Culpepper Decl. at ¶ 2 (stating Plaintiffs' counsel "sent notices pursuant to 17 U.S.C.

9

§ 512(c)(3)(A) of the Digital Millennium Copyright Act ('DMCA') to [Nhat]'s domain registrar Namesilo . . . and provider CloudFlare"), Exh. 1 (letter dated 3/1/19 to Namesilo, in Phoenix, Arizona, from Plaintiffs' counsel), Exh. 2 (letter dated 3/20/19 to Copyright Agent, Justin Paine, of CloudFlare in San Francisco, California, from Plaintiffs' counsel); see also Complaint at ¶ 122 (alleging Nhat registered the APK Site "on June 20, 2016 through the domain registrar Namesilo, LLC (a United States company based in Arizona)").[4] Plaintiffs' counsel states that, in response to the DMCA subpoenas, Namesilo and CloudFlare provided him with information about Nhat. [Culpepper Decl. at ¶ 2.] Plaintiffs have also presented evidence that advertisements which appear to be from the United States were displayed on the APK Site. See id. at ¶ 13, Exh. 5 (screenshot of the APK Site as it appeared on 3/28/19, showing Netflix advertisements).

In addition, the APK Site displays a "DMCA Policy" which states:

> All the content on apkmirrordownload.com is either submitted to apkmirrordownload by email or is readily available in various places on the internet and believed to be in public domain. Content (including images and videos) posted are believed to be posted within our rights according

---

[4] Plaintiffs also allege all of the defendants "use many United States based sources for their activities such as . . . the name server Cloudflare, Inc." [Complaint at ¶ 13.]

10

> to the U.S. Copyright Fair Use Act (Title 17, U.S. Code.)
>
> Notification of Copyright Infringement
>
> apkmirrordownload.com is in compliance with 17 U.S.C. § 512 and the Digital Millennium Copyright Act ("DMCA").  It is our policy to respond to any infringement notices and take appropriate actions under the Digital Millennium Copyright Act ("DMCA") and other intellectual property laws.
>
> If your copyrighted material has been posted on APKversion.net or if links to your copyrighted material are returned through any search engine and you want this material removed, you must provide a written communication that details the information listed in the following section.  Please be aware that you will be liable for damages (including costs and attorneys' fees) if you misrepresent information listed on our site that is infringing on your copyrights.  We suggest that you first contact an attorney for legal assistance on this matter.

[Culpepper Decl. at ¶ 8 (screenshot from APK Site, as it appeared on 9/2/19).]  The display of this policy on the APK Site shows that Nhat was aware of, and attempted to invoke the protections of, potentially applicable United States law.

Plaintiffs have also submitted evidence that, in order to use Namesilo's services, Nhat agreed to the following:

> Except as otherwise set forth . . . , with respect to any dispute over a domain name registration, this Agreement, your rights and obligations and all actions contemplated by this Agreement shall be governed by the laws of the United States of America and the State of Arizona, as if the Agreement was a contract wholly entered into and wholly performed within the State of Arizona.

11

[Id. at ¶ 10 (screenshot of Namesilo's website, showing terms and conditions of service, as of 9/2/19).] Similarly, CloudFlare users acknowledge that their agreement with CloudFlare will be governed by California law. [Id. at ¶ 11 (screenshot of CloudFlare's website, showing terms and conditions, as of 9/2/19).] Although Plaintiffs' claims in this case do not arise from Nhat's agreements with Namesilo and CloudFlare, Nhat's willingness to be bound by federal, Arizona, and California law supports Plaintiffs' position that Nhat established a relationship with the forum, *i.e.* the United States.

Further, as of March 15, 2019, more than 7.6% of the visits to the APK Site were by United States users. [Complaint at ¶ 123.] As of September 5, 2019, the APK Site was receiving approximately 14,600 clicks per month. [Culpepper Decl. at ¶ 9 (describing counsel's use of www.spyfu.com ("SpyFu") to analyze traffic on the APK Site and including a screenshot of counsel's SpyFu query about the APK Site).] As to all of the defendants in this case, Plaintiffs allege the defendants:

- "collect log files including the Internet Protocol ('IP') address, Internet Service Provider ('ISP') and browser type of each user who visits their websites"; [Complaint at ¶ 7;]

- "use cookies and web beacons to store information such as personal preferences of users who visit their websites"; [id. at ¶ 8;]

12

- "obtain financial benefit from their users in Hawaii via third party advertisements"; [id. at ¶ 9;]

- "use the cookies, log files and/or web beacons to narrowly tailor the website viewing experience to the geolocation of the user" and "users in Hawaii receive advertisements based upon their location and websites they have previously visited"; [id. at ¶ 10;] and

- "promote overwhelmingly if not exclusively motion pictures produced by United States companies on their websites," [id. at ¶ 14].

If these factual allegations regarding all defendants were considered, they would be accepted as true for purposes of the Motion, and they would show that the APK Site collected information from its United States users and obtained financial benefits from that information. However, Plaintiffs' generalized allegations about all of the defendants collectively arguably cannot be considered in the analysis of whether personal jurisdiction exists over Nhat. See In re Boon Glob. Ltd., 923 F.3d 643, 651 (9th Cir. 2019) ("[E]ach party's 'contacts with the forum [s]tate must be assessed individually.' Calder v. Jones, 465 U.S. 783, 790, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). The district court therefore erred in not conducting an individualized jurisdictional analysis for each . . . party.").

Plaintiffs' specific evidence about Nhat – his use of Namesilo and CloudFlare; the appearance of United States advertisements on the APK Site; and his invocation of rights

13

under the DMCA – shows that Nhat previously established contacts with the United States.  This is also supported by the allegations regarding all defendants generally, although this Court emphasizes that it has not relied upon the general allegations about all defendants in its analysis.  This Court therefore finds that Nhat has established a relationship with the forum which is based on his own contacts and which is independent of Plaintiffs' contacts with the forum.  See Morrill, 873 F.3d at 1143.

As to the "minimum contacts" requirement, the Ninth Circuit has stated:

> Constitutional due process requires that defendants "have certain minimum contacts" with a forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)).  Minimum contacts are shown if the defendant . . . has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction).  Schwarzenegger [v. Fred Martin Motor Co.], 374 F.3d [797,] 800-02 [(9th Cir. 2004)].

Id. at 1141-42.  This Court finds that Nhat's contacts with the United States, described *supra*, are sufficiently extensive so that the exercise of personal jurisdiction over him would not violate the "traditional notions of fair play and substantial justice."  See Int'l Shoe, 326 U.S. at 316.

Based on the foregoing, this Court finds Nhat has engaged in conduct that was expressly aimed at the United States.

### 3. Causing Harm in the Forum

The final factor of the Calder effects test asks whether Nhat was allegedly "causing harm that [he knew was] likely to be suffered in the forum." See Freestream Aircraft, 905 F.3d at 604 n.3.  On March 12, 2019, Plaintiffs' counsel sent a letter to Nhat by email and airmail from Hawai`i, notifying him that two lawsuits were filed against him in this district court, pursuant to United States law ("3/12/19 Letter").  [Culpepper Decl. at ¶ 2, Exh. 8 (3/12/19 Letter).]  The 3/12/19 Letter stated:

> Promoting and/or Distributing an app such as Showbox and Popcorn Time for the purposes of infringing copyright protected material constitutes contributory copyright infringement, which is a violation of the Federal copyright statute, found at 17 U.S.C. §§ 501-506.  The Federal copyright statutes provide protection for copyright owners and permits the copyright owner to impound your material, recover their attorney's fees from the infringer, and seek damages of $750.00 to $150,000.00 per work, depending on the circumstances surrounding the infringement.
>
> Please appreciate that our clients invested significant time, effort and money in making and marketing their motion pictures.  Accordingly, they request financial compensation for the damages caused by piracy apps such as the ones you promote and distrubte [sic].

15

> . . . We would like for you to agree to cease all promotion and/or distribution of piracy apps and pay a small portion of our clients' damages. . . .

[Culpepper Decl., Exh. 8 at 1-2.]  Plaintiffs' counsel also sent the Complaint and other documents to Nhat by email on April 3, 2019.  [Culpepper Decl. at ¶ 3.]  Plaintiff submitted an email indicating that Nhat received emails from Plaintiffs' counsel, although Nhat's email does not state when he received counsel's emails.  See id., Exh. 3 (email dated 6/13/19 from phannhatnghi@gmail.com to Kerry Culpepper).  The APK Site continued to offer the Show Box app until at least May 27, 2019.  See Culpepper Decl. at ¶ 3 ("Defendant [Nhat] never replied to my emails until after a local counsel in Vietnam I engaged to confirm his address contacted him on May 27, 2019.  Up until that time his website continued to promote and distribute Show Box app . . . .").

      The record in this case, read in its entirety, is sufficient to establish, for purposes of the Motion, that Nhat's APK Site was "causing harm that [he knew was] likely to be suffered in the" United States.  Because all three parts of the Calder effects test have been established, the Court finds that Nhat purposefully directed his activities at the United States.

16

B. **Forum-Related Activities**

The second issue in the due process analysis is whether Plaintiffs' claims arise out of, or relate to, Nhat's forum-related activities. See Mavrix, 647 F.3d at 1227–28. Nhat's forum-related activities involve the operation of the APK Site, and Plaintiffs' claims arise out of, or relate to, those activities because their claims against him arise from the promotion and distribution of the Show Box app on the APK Site. See Complaint at ¶ 124 (alleging the APK Site includes a page "where various versions of the Show Box app are available for download"), ¶ 136 ("The Show Box app provides an interface so that users can easily copy copyright protected content."), ¶ 141 ("Upon information and belief, the Show Box app is using one or more addons for streaming infringing content, including Plaintiffs' Works."),[5] ¶ 146 ("Neither Defendants nor their Show Box app have a license from Plaintiffs to stream and/or download copies of Plaintiffs' Works."), ¶ 148 ("Defendants' users use the Show Box app for its intended and unquestionably infringing purposes, most notably to obtain immediate, unrestricted, and unauthorized access to unauthorized copies of Plaintiffs' Copyrighted Works.").

---

[5] The "Works" are the motion pictures listed in Exhibit 1 to the Complaint. Plaintiffs own the copyrights to the Works. [Complaint at ¶ 16.]

17

The second requirement in the due process analysis is therefore satisfied.

### C. Reasonableness

The final issue in the due process analysis is whether the exercise of jurisdiction over Nhat in this case would be reasonable. See Mavrix, 647 F.3d at 1228. Nhat has the burden of proving that the exercise of jurisdiction would be unreasonable. See Morrill, 873 F.3d at 1142. Because Nhat has not appeared in this case, he has made no attempt to carry his burden. Further, the record reflects that Nhat has been able to: receive service of documents in this case; see Kessner Decl. at ¶¶ 3-4 (citing dkt. nos. 20-1, 20-2); and communicate with Plaintiffs' counsel about this case, see Culpepper Decl., Exh. 4 (email chain between Nhat and Plaintiffs' counsel during June 2019). The Court therefore concludes that the exercise of jurisdiction over Nhat in this case would be reasonable.

### D. Summary

All three requirements of the due process analysis have been met. See Mavrix, 647 F.3d at 1227-28. This Court therefore concludes that exercising personal jurisdiction over Nhat in this case would comport with due process. See Hydentra HLP, 783 F. App'x at 665. As previously noted, Plaintiffs' claims against Nhat arise under federal law, and Nhat is not subject to the jurisdiction of any state court in the United

18

States.  This Court therefore concludes that service of the Complaint and Summons on Nhat establishes personal jurisdiction over him, pursuant to Fed. R. Civ. P. 4(k)(2).

Because this Court concludes that personal jurisdiction exists over Nhat, Plaintiffs' Objections are granted, and the F&R is rejected.

**II.  Default Judgment**

> Following a determination that jurisdiction is proper, the Court must consider whether default judgment is appropriate.  The court should consider the following factors in deciding whether to grant a motion for default judgment:
>
> > (1)  the possibility of prejudice to the plaintiff;
> >
> > (2)  the merits of plaintiff's substantive claim;
> >
> > (3)  the sufficiency of the complaint;
> >
> > (4)  the sum of money at stake in the action;
> >
> > (5)  the possibility of a dispute concerning material facts;
> >
> > (6)  whether the default was due to excusable neglect; and
> >
> > (7)  the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.
>
> See Eitel [v. McCool], 782 F.2d [1470,] 1471-72 [(9th Cir. 1986)] (the Eitel factors).

Trs. of Haw. Sheet Metal Workers' Tr. Funds v. Akua Air Conditioning LLC, CIVIL NO. 19-00404 HG-WRP, 2019 WL 7480505, at

19

\*2 (D. Hawai`i Dec. 3, 2019), *report and recommendation adopted*, 2020 WL 50414 (Jan. 3, 2020).  The magistrate judge did not reach the analysis of the Eitel factors because he concluded that personal jurisdiction was lacking.  The Motion is therefore remanded to the magistrate judge so that he can conduct the analysis of the Eitel factors in the first instance.

## CONCLUSION

On the basis of the foregoing, Plaintiffs' November 20, 2019 objections to the magistrate judge's November 7, 2019 Findings and Recommendation to Deny Plaintiffs' Motion for Default Judgment Against Defendant Nghi Phan Nhat are HEREBY GRANTED.  The magistrate judge's F&R is REJECTED, and Plaintiffs' Motion for Default Judgment Against Defendant Nghi Phan Nhat, filed September 6, 2019, is REMANDED to the magistrate judge for further consideration.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 29, 2020.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**HUNTER KILLER PRODUCTIONS, ET AL. VS. QAZI MUHAMMAF ZARLISH, ET. AL; CV 19-00168 LEK-KJM; ORDER GRANTING PLAINTIFFS' OBJECTIONS; REJECTING MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATION TO DENY PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT NGHI PHAN NHAT; AND REMANDING MOTION TO MAGISTRATE JUDGE**