IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HUNTER KILLER PRODUCTIONS, INC., et al., | ) ) | Civil No. 19-00168 LEK-KJM |
| | ) | |
| Plaintiffs, | ) ) | FINDINGS AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART |
| vs. | ) ) | PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT AGAINST |
| QAZI MUHAMMAD ZARLISH, et al., | ) ) | DEFENDANT NGHI PHAN NHAT |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

FINDINGS AND RECOMMENDATION TO GRANT
IN PART AND DENY IN PART PLAINTIFFS' MOTION FOR
DEFAULT JUDGMENT AGAINST DEFENDANT NGHI PHAN NHAT

On September 6, 2019, Plaintiffs Hunter Killer Productions, Inc., TBV

Productions, LLC., Venice PI, LLC, Bodyguard Productions, Inc., and LHF

Productions, Inc. (collectively, "Plaintiffs") filed a Motion for Default Judgment

Against Defendant Nghi Phan Nhat ("Motion").  ECF No. 37.  Defendant Nghi

Phan Nhat ("Defendant Nhat") did not file a response to the Motion.

After carefully considering the Motion and the mandate of the remand from

the district court on April 29, 2020, the Court FINDS AND RECOMMENDS that

the district court GRANT IN PART AND DENY IN PART the Motion as set forth

below.

BACKGROUND

Since much of the factual and procedural history of this case has been set

forth in the Findings and Recommendation to Deny Plaintiffs Motion ("11/07/2019

F&R"), the Court shall briefly summarize the procedural history.  Plaintiffs filed

their Complaint on April 3, 2019 against various Defendants, including Defendant

Nhat, alleging, among other things, various copyright violations.  ECF No. 1.

Plaintiffs are copyright owners of the following motion pictures which are the

subject of this litigation:  (1) Hunter Killer; (2) London Has Fallen; (3) I Feel

Pretty; (4) Once Upon a Time in Venice; (5) The Hitman's Bodyguard

(collectively, "Works").  Plaintiffs allege Defendants used their websites to

promote ShowBox, a software application, to the public as a legitimate means to

view Plaintiffs' Works for free.  ECF No. 1 at 2 ¶ 1, 3, 5.  *See also id.* at 6 ¶ 17.

On July 9, 2019, the Clerk of the Court entered default against Defendant

Nhat.  Thereafter, on September 6, 2019, Plaintiffs filed the Motion.  The Court

held a hearing on the Motion on November 6, 2019.  ECF No. 44.  Kerry S.

Culpepper, Esq., appeared on behalf of Plaintiffs.  Defendant Nhat did not appear

at the hearing.  *See id.*  On November 7, 2019, this Court issued its 11/07/2019

F&R.  ECF No. 46.  Plaintiffs filed their objections to the 11/07/2019 F&R on

November 20, 2019.  ECF No. 48.  On April 29, 2020, the district court issued its

Order:  Granting Plaintiffs' Objections; Rejecting the Magistrate Judge's Findings

and Recommendation to Deny Plaintiffs' Motion for Default Judgment Against
Defendant Nghi Phan Nhat; and Remanding the Motion to the Magistrate Judge
("04/29/2020 Order").  ECF No. 53.  The district court found that Plaintiffs have
satisfied personal jurisdiction and remanded the Motion to this Court for further
consideration.  *See id*. at 20.

DISCUSSION

Since the district court has determined that Plaintiffs' have established
personal jurisdiction over Defendant Nhat, this Court will next consider whether
default judgment is appropriate.

I.     Legal Standard

Default judgment may be entered for the plaintiff if the defendant has
defaulted by failing to appear or otherwise defend against the plaintiff's complaint
and the plaintiff's claim is for a "sum certain or for a sum which can by
computation be made certain[.]" Fed. R. Civ. P. 55(a), (b).  The granting or denial
of a motion for default judgment is within the discretion of the court.  *Haw.
Carpenters' Trust Funds v. Stone*, 794 F.2d 508, 511-12 (9th Cir. 1986).  Entry of
default does not entitle the non-defaulting party to a default judgment as a matter
of right.  *In re Villegas*, 132 B.R. 742, 746 (B.A.P. 9th Cir. 1991).  Default
judgments are ordinarily disfavored, and cases should be decided on their merits if
reasonably possible.  *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986).  Courts

3

may consider the following factors in deciding whether to grant a motion for default judgment (collectively, "*Eitel* factors"):

> (1) The possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72 (citation omitted).

On default "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., v. Inc. v. Heidenthal*, 826 F.2d 915, 17 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). The allegations in the complaint regarding liability are deemed true, but the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Also, "necessary facts not contained in the pleadings, and the claims which are legally insufficient are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

II.   Application of the *Eitel* Factors

A.   Possibility of Prejudice to Plaintiffs

The first factor considers whether Plaintiffs would suffer prejudice if default judgment is not entered. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d

4

1172, 1177 (C.D. Cal. 2002). Plaintiffs do not have any other recourse than default judgment to obtain relief. Accordingly, the first *Eitel* factor favors default judgment.

      B.    Merits of Plaintiffs' Substantive Claims

Under the second *Eitel* factor, the Court considers the merits of Plaintiffs' substantive claims. The allegations in the complaint are taken as true for purposes of determining liability. *See TeleVideo Sys., Inc.* at 917-18; *Fair Hous. of Marin*, 285 F.3d at 906. Taking Plaintiffs' allegations in the Complaint as true, the Court finds that Plaintiffs have established that they are entitled to default judgment against Defendant Nhat.

Plaintiffs allege intentional inducement and contributory copyright infringement by Defendant Nhat. Plaintiffs have made a showing for contributory copyright infringement. The Ninth Circuit has recognized that "[o]ne who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct *of another* may be liable as a 'contributory' [copyright] infringer." *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004) (quotation marks and citation omitted) (emphasis and brackets in original). The Ninth Circuit has "interpreted the knowledge requirement for contributory copyright infringement to include both those with *actual knowledge* and those who *have reason to know* of direct infringement." *Id.* (citation omitted).

Plaintiffs' Complaint alleges that Defendant Nhat used his interactive website, apkmirrordownload.com, to promote piracy software applications Show Box and Popcorn Time as legitimate applications to download copyrighted content for free.  ECF No. 1 at 31 ¶ 121, 32 ¶¶ 124-25.  Plaintiffs own the copyrights for the content that Defendant Nhat has induced consumers to download.  Plaintiffs allege that Defendant Nhat caused or materially contributed to the direct infringement of Plaintiffs' copyrights by inducing and facilitating users to download Plaintiffs' copyrighted works.  *See* ECF No. 1 at ¶¶ 187-193.  Plaintiffs sufficiently state a claim for contributory copyright infringement.  *See Ellison*, 357 F.3d at 1076.  Accordingly, the merits of Plaintiffs' claims weigh in favor of default judgment.

    C.    Sufficiency of the Complaint

As discussed above, the Court finds that the allegations in the Complaint are sufficiently plead.  Accordingly, the sufficiency of the Complaint weigh in favor of default judgment.

    D.    Sum of Money at Stake

For the fourth *Eitel* factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176 (citing *Eitel*, 782 F.2d at 1472).  Under the Copyright Act, a plaintiff may elect to seek actual damages attributable to the infringement or

statutory damages of "not less than $750 or more than $30,000."  17 U.S.C. §

504(b), (c).  Plaintiffs seek $30,000 for each copyrighted work for a total of

$150,000 statutory damages for the five copyrighted works, as well as $12,226.14[1]

for attorneys' fees and $2,639.08 in costs.  *See* ECF No. 37 at 23, 32.  Defendant

Nhat's software application distributes Plaintiffs' Works infringing on Plaintiffs'

copyrights.  ECF No. 1 at ¶¶ 187-193.  Furthermore, Plaintiffs contend that

Defendant Nhat makes $927/month in ads on his website.  ECF No. 37-2 at 5 ¶ 9.

While this conduct is serious, Plaintiffs fail to provide sufficient evidence to assess

this fourth factor.  For example, Plaintiffs do not show that the monthly ad profits

are fully attributed to the downloading of Plaintiffs' Works, and further, Plaintiffs

do not provide any evidence as to the amount of their loss.  Based on the

information provided, the Court determines that this factor weighs neither in favor

of nor against default judgment.

E.      Possibility of Dispute Concerning Material Facts

The fifth factor, the possibility of dispute concerning material factors,

weighs in favor of default judgment.  As noted above, the Court takes the well-pled

allegations of the Complaint as true, except those relating to the amount of

damages.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Despite given a fair

opportunity to defend against Plaintiffs claims, Defendant Nhat has not done so.

---

[1] This amount includes $518.64 requested for GET taxes.

Although Plaintiffs served Defendant Nhat by mail with the Complaint, Defendant Nhat has failed to make an appearance in this action or otherwise respond to the Plaintiffs' claims.  ECF No. 37-2 at 2 ¶ 3.  Because no dispute has been raised regarding Plaintiffs' material factual allegations, this factor favors default judgment.

> F.     Whether Default was Due to Excusable Neglect

Regarding the sixth factor, the Court finds that Defendant Nhat's default was not the result of excusable neglect.  Defendant Nhat failed to defend this action, and the Clerk of Court entered default against him.  ECF No. 29.  The record indicates that Defendant Nhat's default was not the result of excusable neglect, but rather due to Defendant Nhat's conscious and willful decision not to defend this action.  In fact, Plaintiffs provide evidence that Defendant Nhat knew of the pending lawsuit and chose not to defend against it.  ECF No. 37-5, 37-10, 37-11.  Consequently, this factor weighs in favor of default judgment.

> G.     Policy Favoring Decisions on the Merits

Defendant Nhat's default makes a decision on the merits impractical, if not impossible.  Under Federal Rule of Civil Procedure 55, "termination of a case before hearing the merits is allowed whenever a defendant fails to defend and action."  *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 501 (C.D. Cal. 2003) ("the mere

existence of Fed. R. Civ. P. 55(b) indicates that the seventh *Eitel* factor is not alone dispositive.").  Here, Defendant Nhat has failed to defend this action, and has thus rendered adjudication on the merits before this Court impracticable.  Although the policy favoring decisions on the merits generally weighs against default judgment, this factor alone does not preclude the Court from entering default judgment.  Therefore, this factor does not preclude the Court from entering default judgment against Defendant Nhat.

H.      Totality of the *Eitel* Factors

The Court finds that the totality of the *Eitel* factors weighs in favor of entering default judgment in favor of Plaintiffs against Defendant Nhat.  Accordingly, the Court considers Plaintiffs' request for injunctive relief, statutory damages and attorneys' fees and costs.

IV.   Remedies

Although Defendant Nhat's default establishes his liability to Plaintiffs, it does not establish the amount of damages or other relief to which Plaintiffs are entitled.  *TeleVideo Sys., Inc.*, 826 F.2d at 917-18.  Plaintiffs must provide evidence to support their requested relief and the relief "must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Fed. R. Civ. P. 54(c).  Here, Plaintiffs seek (1) injunctive relief in the form of an order (i) prohibiting Defendant Nhat from infringing on Plaintiffs' copyrighted Works and

(ii) requiring Defendant Nhat's domain registar Namesilo and provider CloudFlare, neither of which is a party to this case, to stop access to Defendant Nhat's domain; (2) a total in statutory damages of $150,000, $30,000 for each copyrighted Work; (3) $12,226.14 for attorneys' fees; and (4) $2,639.08 in costs.  ECF No. 37 at 23, 25-26, 32.  The Court addresses each of Plaintiffs' requests in turn below.

A.      Injunctive Relief

The Copyright Act authorizes a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or retain infringement of a copyright."  17 U.S.C. § 502(a).  To be entitled to a permanent injunction, Plaintiffs must demonstrate that: (1) they have suffered an irreparable injury; (2) remedies at law, *e.g.*, monetary damages, are inadequate to compensate for the injury; (3) "considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted"; and (4) "the public interest would not be disserved by a permanent injunction" (collectively, "*eBay* factors").  *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *c.f. Cook Prods., LLC v. Stewart*, Civ. No. 17-00034 ACK-RLP, 2017 WL 4797513, at *3 (D. Haw. Oct. 24, 2017) (citing *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011)) ("[I]rreparable harm is not presumed even where infringement has been found."); *see also Hardy Life, LLC v. Nervous Tattoo, Inc.*, No. CV 08-3524 PA (CTx), 2008 WL 11338698, at *3 (C.D. Cal. Aug. 4, 2008) (noting that

"*eBay* rejected a presumption of irreparable harm when assessing the issuance of a permanent injunction").

This district court and other courts in this circuit have issued permanent injunctions in these types of cases involving copyright infringement through the BitTorrent protocol. *See Cook Prods., LLC. v. Stewart*, Civ. No. 17-00034 ACK-RLP, 2017 WL 4797513, at *3 (D. Haw. Oct. 24, 2017) (citing *Malibu Media, LLC v. Sianturi*, Case No. 1:16-cv-01059 AWI-SKO, 2017 WL 3328082, at *6 (E.D. Cal. 2017)); *LHF Prod., Inc. v. Does 1-19*, Case No. C16-1175RSM, 2017 WL 615197, at *3 (W.D. Wash. Feb. 15, 2017); *Dallas Buyers Club, LLC v. Bui*, CASE No. C14-1926RAJ, 2016 WL 1242089, at *3 (W.D. Wash. Mar. 30, 2016); *Elf-Man, LLC v. C.G. Chinque Albright*, No. 13-CV-0115-TOR, 2014 WL 5543845, at *7 (E.D. Wash. Oct. 31, 2014)); *see also ME2 Prods., Inc. v. Pumaras*, CIVIL NO. 17-00078 SOM/RLP, 2017 WL 4707015, at *7 (D. Haw. Oct. 19, 2017). As in the foregoing cases, this Court finds that Plaintiffs have sufficiently demonstrated that a permanent injunction as to Defendant Nhat is appropriate in this case.

First, the Court finds that Plaintiffs have sufficiently established irreparable harm and that adequate remedies at law are not available to Plaintiffs. Defendant Nhat can easily continue to infringe and distribute the copyrighted works to numerous other users by the use of the piracy applications on his website. *See*

ECF No. 37 at 27.  Thus, should Defendant Nhat's piracy applications remain on his website, Plaintiff will likely be without legal recourse as to their copyrights.

Also, Plaintiffs have shown that there is a high likelihood of continuing violations of their copyrights if an injunction is not entered.  According to Plaintiffs, Defendant Nhat continues to distribute the software applications, even after Defendant Nhat was notified of the lawsuit.  ECF No. 37-2 at ¶¶ 16-18. Accordingly, without an injunction, Defendant Nhat will likely be the source for others to repeatedly download the Works.

Furthermore, Defendant Nhat has also refused to participate in this action. Accordingly, the Court has no reassurance that Defendant Nhat will stop making software applications available to the public through his website infringing on Plaintiffs' copyrighted Works.  *See Stewart*, 2017 WL 4797513, at *3 (citing *Hearst Holdings, Inc. v. Kim*, Case No. CV 07-4642 GAF (JWJx), 2008 WL 11336137, at *7 (C.D. Cal. Aug. 17, 2008) (holding that the defendants' "failure to respond in any way to this action does not reassure the Court that [they] have stopped infringing [the plaintiffs'] copyrights, which is yet another reason why granting a permanent injunction to enjoin them from further infringement is appropriate"); *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006) ("Defendant's failure to respond to the complaint likely suggests Defendant does not take seriously the illegality of the infringing activity.")).

12

Accordingly, the Court finds that Plaintiffs have established that they have and will likely continue to suffer irreparable harm without an injunction, and that remedies at law would be inadequate in this case.

Second, as to the balance of hardships, Defendant Nhat suffers no injury due to an injunction "other than refraining from his infringing conduct, while Plaintiff would have to trace numerous IP addresses as distribution and infringement continues." *Stewart*, 2017 WL 4797513, at *3. Considering the hardships between Plaintiffs and Defendant Nhat, the Court finds that a remedy in equity is warranted. *See Malibu Media, LLC v. Redacted*, Civil Action No. DKC 15-0750, 2016 WL 3668034 at *5 (D. Md. July 11, 2016) (finding that considering the balance of hardships between the plaintiff and defendant, a remedy in equity was warranted because the defendant suffered no injury due to an injunction other than what would "be a result of [the defendant] ceasing the allegedly infringing conduct"); *c.f. Medias & Co., Inc. v. Ty, Inc.*, 106 F. Supp. 2d 1132, 1140 (D. Colo. 2000) (holding that the balance of hardships weighed in favor of the plaintiff because "any injury to [the defendant's] ceasing the alleged infringing conduct").

Finally, there is no dispute in this circuit that the prevention of copyright infringement serves the public interest. *See, e.g., Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1222 (C.D. Cal. 2007) (citation omitted) ("The public interest in receiving copyrighted content for free is

outweighed by the need to incentivize the creation of original works."); *see also*

*UMG Recordings, Inc. v. Blake*, No. 5:06-CV-00120-BR, 2007 WL 1853956, at \*3

(E.D.N.C. June 26, 2007) ("[T]here is a substantial public interest in preserving a

copyright holder's exclusive rights and no public interest will be disserved by

enjoining Defendant from continuing this activity.").

Based on the foregoing, the Court finds that Plaintiffs have made a sufficient

showing of the four *eBay* factors to entitle them to a permanent injunction in this

case.  Notwithstanding this Court's finding that a permanent injunction is

appropriate, the Court will modify the injunction sought by the Plaintiffs.  As

referenced above, Plaintiffs seeks a permanent injunction: (1) barring Defendant

Nhat from inducing and contributorily infringing on Plaintiffs' Works and (2)

ordering non-parties Namesilo and CloudFlare to "cease facilitating access to

Defendant's [Nhat] domain and any or all domain names and websites through

which Defendants engaged in the distribution and promotion of the Show Box

app."  ECF No. 37 at 26.  The Court finds that the request for Namesilo and

CloudFlare to stop "facilitating access" to Defendant Nhat's domain and websites

that "engaged in the distribution and promotion of the Show Box app" is overly

broad.  *Id.  See Quiksilver, Inc. v. Kymsta Corp.*, 360 Fed. Appx. 886, 889 (9th Cir.

2009) ("Although the district court has 'considerable discretion in fashioning the

terms of an injunction,' an injunction must be 'tailored to eliminate only the

14

specific harm alleged.'") (quoting *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967

F.2d 1280, 1297 (9th Cir. 1992)).

"BitTorrent has legal uses, and [Plaintiffs are] not the copyright holder with

respect to every other movie." *ME2 Prods., Inc.*, 2017 WL 4707015, at *8

(declining to order a broad injunction requiring the defendant to cease all use of

BitTorrent); *Stewart*, 2017 WL 4797513, at *4 (citing *ME2 Prods., Inc.*).

Accordingly, the Court recommends that the district court grant an injunction that

is tailored to the specific facts of this case, which this Court finds is more

consistent with the Copyright Act.  *See* 17 U.S.C. § 502(a) (providing that a court

may issue a final injunction "on such terms as it may deem reasonable to prevent

or retrain infringement of a copyright"); *Craigslist, Inc. v. Naturemarket, Inc.*, 694

F. Supp.2d 1039, 1062 (N.D. Cal. 2010) ("Generally, an injunction must be

narrowly tailored to remedy only the specific harms shown by a plaintiff, rather

than to enjoin all possible breaches of the law.").  Additionally, a court may issue

an injunction against a non-party only where the non-party acts in active concert or

participation with an enjoined party.  Fed. R. Civ. P. 65(d)(2) (a preliminary

injunction only binds those who receive actual notice of it by personal service or

are parties, their officers, agents, servants, employees, and attorneys, and persons

in active concert); *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1984) ("A federal

court may issue an injunction if it has personal jurisdiction over the parties and

subject matter jurisdiction over the claims; it may not attempt to determine the rights of persons not before the court.").  Even taking the factual allegations in the Complaint as admitted, Plaintiffs do not allege that Namesilo or CloudFlare are working in active concert or participation with Defendant Nhat.  Rather, Plaintiffs allege that Defendants "use many United States based sources for their activities such as . . . the domain registrar company Namesilo, LLC, [and] the name server Cloudflare, Inc.[.]"  ECF No. 1 at 5 ¶ 13, and that Defendant Nhat "registered the domain apkmirrordownload.com on June 20, 2016 through the domain registrar Namesilo, LLC."  *Id.* at 31 ¶ 122.

The Court RECOMMENDS that the district court GRANT the preliminary injunction, but tailor the injunction to enjoin Defendant Nhat from inducing and contributorily infringing on Plaintiffs' Works and DENY the injunctive relief request ordering non-parties Namesilo and CloudFlare to stop facilitating access to Defendant Nhat's domain and any or all domain names and websites through which Defendant Nhat distributed and promoted the Show Box application.

B.     Statutory Damages

Under the Copyright Act, a plaintiff may elect to seek actual damages attributable to the infringement or statutory damages of "not less than $750 or more than $30,000."  17 U.S.C. § 504(b), (c).  Where the infringement was "willful," however, the court may award up to $150,000 in statutory damages.  *Id*.

16

§ 504(c)(2).  District courts have "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima."  *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (citation omitted).

Statutory damages "serve both compensatory and punitive purposes" so as "to sanction and vindicate the statutory policy of discouraging infringement."  *Los Angeles News Serv. v. Reuters Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998) (quotation marks and citation omitted).  This Court is thus guided by "what is just in the particular case, considering the nature of the copyright, the circumstance of the infringement and the like."  *Id.* (quotation marks and citation omitted).

Plaintiffs argue that they are entitled to $150,000.00 in statutory damages because Defendant Nhat's conduct was willful.  "Infringement is considered willful when . . . (1) the defendant knew that those acts infringed plaintiffs' copyrights; or, (2) the defendant *should have known* that those acts infringed plaintiffs' copyright; or, (3) the defendant engaged in conduct that was reckless or demonstrated a reckless disregard for plaintiffs' copyrights."  *Erickson Productions, Inc. v. Kast*, 921 F.3d 822, 833 (9th Cir. 2019) (emphasis in the original).

In support of Plaintiffs' contention that Defendant Nhat conduct was willful, Plaintiffs cite the cases of *Columbia Pictures, et. al. v. Justin Bunnell et. al.*, 2:06-

cv-01093-FMC-JCx, Doc. #409 (C.D. Cal. May 5, 2008) and *Lions Gate Films Inc. v. Does*, No 2:14-cv-6033-MMM-AGRx, 2014 WL 3895240 (C.D. Cal. Aug. 8, 2014)[2] to show that courts in the Ninth Circuit have awarded damages of $30,000 or more for similar cases. *See* ECF No. 37-8, 37-9.  While it is true that in both *Columbia Pictures* and *Lions Gate File Inc.* the court awarded damages of $30,000 or more, those cases fail to provide any authority for this Court to find Defendant Nhat's conduct was willful.  In this case, Defendant Nhat is a resident of Vietnam.  It is unclear what knowledge Defendant Nhat had of copyright laws and infringement when he began using the software applications on his website. However, as of March 12, 2019, Defendant Nhat should have been aware of his copyright infringement when Plaintiffs sent a demand letter by mail and email informing Defendant Nhat of his copyright infringement and the possibility of a lawsuit.  *See* ECF No. 37-10.  Defendant Nhat did not respond to this communication and continued distributing Show Box and Popcorn Time.  ECF No. 1 at 32 ¶ 126, 37-2 at ¶ 2-3.  Accordingly, the Court finds that Defendant Nhat's conduct was willful.  *See Erickson Prod., Inc.*, 921 F.2d at 833 (conduct was willful when defendants failed to comply with plaintiff's demand letters).

---

[2] The Court notes that Exhibit 7 and the *Lions' Gate* case cited on ECF No. 37 at 25 are not the same cases.

For willful conduct, "the court may increase the statutory damage award to $150,000 per work infringed." *Id.* Plaintiffs are requesting $30,000 for each copyrighted work, which comes to a total of $150,000 for all five Works. The Court finds this amount to be reasonable in this case. This amount is above the statutory minimum and takes into account (i) the minimal profit from ads on Defendant Nhat's website, (ii) that Defendant Nhat's distribution of the software application which facilitates the downloading of Plaintiff's copyrighted Works and (iii) Defendant Nhat's continued promotion and distribution of the software application after being served with the Complaint. In contrast to the many cases in this district which awarded the statutory minimum for download of one movie for view, in this case, Defendant Nhat is the supplier of the *means* to download the copyrighted Works. Therefore, this Court recommends that the district court award more than the statutory minimum. *See Harris*, 734 F.2d at 1335 (Court is allowed "wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and mimima."). Accordingly, the Court recommends that the district court award Plaintiffs statutory damages in the amount of $150,000.

>        C.      Attorneys' Fees

In relevant part, the Copyright Act provides that a court "may" award a reasonable attorneys' fee to the prevailing party. 17 U.S.C. § 505. Section 505

"confers broad discretion on district court" but "in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of the litigating positions." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1988 (2016). Courts are encouraged to examine "several nonexclusive factors," including "the degree of success obtained; frivolousness, motivation, objective unreasonableness (both in factual and legal arguments in the case); and the need in particular circumstances to advance considerations of compensation and deterrence." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1197 (9th Cir. 2001) (citation omitted); *see also Kirtsaeng*, 136 S. Ct. at 1985. The Ninth Circuit has held that "[t]he most important factor in determining whether to award fees under the Copyright Act, is whether an award will further the purposes of the Act." *Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108, 1111 (9th Cir. 2013).

The Court finds that an award of attorneys' fees is appropriate in this case. Plaintiffs' claims against Defendant Nhat are not frivolous, and Plaintiffs have succeeded in obtaining default judgment against Defendant Nhat for injunctive relief and statutory damages.

"When calculating the amount of attorneys' fees to be awarded in litigation, the district court applies the lodestar method, multiplying the number of hours expended by a reasonable hourly rate." *Ryan v. Editions Ltd. W., Inc.*, 786 F.3d

20

754, 763 (9th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The court may adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), that are not already subsumed into the lodestar. *See Leff v. Bertozzi Felice Di Giovanni Rovai & C. Srl*, CIVIL No. 15-00176 HG-RLP, 2015 WL 9918660, at *8-9 (D. Haw. Dec. 30, 2015), *adopted in* 2016 WL 335850 (D. Haw. Jan. 26, 2016) (citing *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000)).  The district court may also reduce the amount of requested fees to reflect a party's limited degree of success, to account for block billing, or to deduct hours deemed excessive as long as it provides an adequate explanation of its fee calculation. *Ryan*, 786 F.3d at 763.

    1.  Reasonable Hourly Rate

   "The prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan v. Multnomah Cty.*, 815 F.2d 1258, 1262-63 (9th Cir. 1987). The requesting party "has the burden to produce satisfactory evidence, in addition to the affidavits of its counsel, that the requested rates are in line with those prevailing in the community for similar services of lawyers of reasonably comparable skill and reputation." *Id*.  Here, Plaintiffs request an hourly rate of $250 for their counsel, Mr. Culpepper.  *See* ECF No. 37-2 at 16.

The Court finds that Plaintiffs' requested hourly rate of $250[3] for Mr. Culpepper is manifestly reasonable and consistent with the hourly rates recently awarded to Mr. Culpepper in similar cases. *See ME2 Prod., Inc. v. Pumaras*, 2017 WL 4707015, at *7 (finding $250 including taxes to be reasonable amount for Mr. Culpepper); *Szerlip*, 2017 WL 4883220, at *5 (awarding Mr. Culpepper an hourly rate of $250); *Stewart*, 2017 WL 4797513, at *6. Accordingly, the Court recommends that the district court award Mr. Culpepper an hourly rate of $250, including GET. *See Szerlip*, 2017 WL 4883220, at *5 (awarding $250 hourly rate including GET); *ME2 Prods., Inc.* 2017 WL 4707015, at *7 (same, holding that "[t]he nature of the work causes this court to treat $250 as including applicable taxes").

### 2.    Reasonable Hours Expended

Plaintiffs seek to recover a total of 46.83 hours expended by Mr. Culpepper in this case. *See* ECF No. 37-2 at 16. The fee applicant bears the burden of documenting the hours expended and must submit evidence in support of the hours worked. *Hensley*, 461 U.S. at 437; *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992). The prevailing party bears the burden of proving that the fees requested are associated with the relief requested and are reasonably necessary to

---

[3] The Court recommends that the hourly rate of $250 be inclusive of any GET taxes.

achieve the results obtained. *See Tirona v. State Farm Mut. Auto. Ins. Co.*, 821 F. Supp. 632, 636 (D. Haw. 1993) (citations omitted).

Courts, however, have their own "independent duty to review the submitted itemized log of hours to determine the reasonableness of the hours requested in each case." *Irwin v. Astrue*, No. 3:10-CV-545-HZ, 2012 WL 707090, at *1 (D. Or. Mar. 5, 2012) (citing *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001)). The courts must guard against awarding fees and costs which are excessive, and must determine which fees were self-imposed and avoidable. *See Tirona*, 821 F. Supp. at 637 (citation omitted). To this end, courts are empowered to use their discretion to "'trim fat' from, or otherwise reduce, the number of hours claimed to have been spent on the case." *Soler v. G & U, Inc.*, 801 F. Supp. 1056, 1060 (S.D.N.Y. 1992) (citation omitted). Accordingly, courts must deny compensation for time expended on work deemed excessive, redundant, or otherwise unnecessary. *See Gates*, 987 F.2d at 1397 (citing *Hensley*, 461 U.S. at 433-34). Based on a review of Mr. Culpepper's time entries, the Court recommends that the district court reduce Plaintiffs' requested hours as set forth below.

a.    Clerical Tasks

The Court finds that Mr. Culpepper's time entries include time expended on clerical tasks, which are not recoverable because they "are part of an attorney's overhead and are reflected in the charged hourly rate." *Au v. Funding Grp.*, 933 F.

Supp. 2d 1264, 1275-76 (D. Haw. 2013).  The Court finds the following four time

entries are for clerical tasks:  (1) 4/26/19 confirming state dept. procedure on

Vietnam mailing of service; filing affidavit of foreign mailing and filing; (2)

5/27/19 creating packages for clerk sending, Fedex labels (issue re recipient

delivery signature requirement); (3) 5/28/19 tel conf with Fedex; creating labels for

Defendants; Sending packages to court; and (4) 6/8/19 downloading cert of service

Nghi Nhat; tel call with FedEx.  *See* ECF 37-2 at 14-15.  Mr. Culpepper spent a

total of 3 hours on these tasks.  The Court deems these tasks clerical in nature.  As

such, the Court recommends that 3 hours be subtracted from Mr. Culpepper's total

hours.

       b.    Block Billing

     "The term 'block billing' refers to the time-keeping method by which each

lawyer and legal assistant enters the total daily time spent working on a case, rather

than itemizing the time expended on specific tasks."  *JJCO, Inc. v. Isuzu Motors*

*America, Inc.*, Civ. No. 08-00419 SOM-LEK, 2010 WL 3001924, at *12 (D. Haw.

Jul. 30, 2010) (citation omitted).  This practice violates Local Rule 54.2(f) which

requires "a description of the work performed by each timekeeper, broken down by

hours expended on each task."  LR 54.2(f).  The Court finds the following entries

constitute block billing: (1) 3/1-3/4/2019; (2) 3/5/2019; (3) 3/12/2019; (4)

3/21/2019; (5) 5/6/2019; (6) 5/7/2019; (6) 5/10/2019; and (7) 5/14/2019.  These

entries total 8.25 hours.  The Court recommends that these block billing entries be reduced by one-third.  *See* LR 54.2(f)(3).  ("Block billing is not permitted, and block billed entries may be partially or completely excluded by the court.")  Accordingly, the Court recommends 2.75 hours be subtracted from Mr. Culpepper's total hours.

> c.    Insufficient Descriptions

"The party seeking an award of fees must describe adequately the services rendered, so the reasonableness of the requested fees can be evaluated."  L.R. 54.2(f).  Without proper documentation, this Court cannot evaluate the reasonableness of the requested fees.  The following entries do not contain enough information for this Court to evaluate the reasonableness:  (1) 4/10/2019 Studying CloudFlare Response with Defendant ID info and his other websites; (2) 4/29/2019 Preparing translation of Complaint and docs for foreign mailing; (3) 4/30/2019 Investigation of owner of different site to confirm relationship; (4) 5/14/2019 Email correspondence with Vietnam counsel; and (5) 5/27/2019 Email exchange with Vietnam Counsel and Nghi Phan Nhat.  These entries lack information for the Court to determine reasonableness, for example, the two email entries fail to provide what the emails were about and/or the purpose of the emails.  These entries that contain insufficient information total 4.08 hours.  As such, the Court recommends subtracting 4.08 hours from Mr. Culpepper's requested hours.

d.   Excessive Time

"Time spent on work that is 'excessive, redundant, or otherwise unnecessary' shall not be compensated." *Szerlip*, 2017 WL 4883220, at \*6 (other citation omitted) (citing *Gates*, 987 F.2d at 1397).  Plaintiffs seek to recover 4.5 hours for preparing and finalizing the complaint in this matter, as well as 11 hours in preparing the instant Motion.  The Court finds that these amounts to be excessive.  The Court notes that Mr. Culpepper has filed many of these type of copyright infringement and contributory copyright infringement cases in this district.  The law cited and claims in these cases are very similar, therefore, 4.5 hours for preparing and finalizing the complaint is excessive.  Thus, the Court reduces the amount by 2.5 hours, recommending 2 hours for the preparing of the Complaint.  Further, Plaintiffs seek 11 hours for preparation of the instant Motion. Again, the Court notes that Mr. Culpepper has filed similar motions for default judgment in other cases in this district.[4]  The Court does acknowledge that the instant Motion is somewhat different than previous motions for default judgment filed by Mr. Culpepper because Defendant Nhat is in a foreign jurisdiction.  The Court realizes that more time was needed in the instant motion regarding the issue

---

[4]   *See* (1) *ME2 Prods., Inc. v. Pumaras*, CV 17-00078 SOM-RLP, ECF No. 32 (July 12, 2017); (2) *Cook Prods., Inc. v. Stewart*, CV 17-00034 ACK-RLP, ECF No. 26 (July 7, 2017); and (3) *Cook Prods., Inc. v. Szerlip*, CV 16-00637 HG-KSC., ECF No. 48 (June 8, 2017).

of jurisdiction, therefore, the Court reduces the amount of the 9/2/2019 & 9/3/2019

entry by 6 hours.  Accordingly, the Court reduces Mr. Culpepper's requested hours

by a total of 8.5 hours for excessiveness.

e.     Total lodestar calculation

In sum, the Court finds that Plaintiffs have established the reasonableness of

an award of attorneys' fees as follows:

| Attorney | Hours | Hourly Rate | Lodestar |
|---|---|---|---|
| Kerry Culpepper, Esq. | 28.5[5] | $250 | $7,125.00 |

Accordingly, the Court recommends that the district court award Plaintiffs

$7,125.00 for attorneys' fees including GET.

D.     Costs

Pursuant to Section 505, a prevailing party may recover its "full costs."

Plaintiffs seek an award of $2,639.08.  *See* ECF No. 37-2 at 13.  The Court finds

these amounts to be reasonable.  Accordingly, the Court RECOMMENDS that the

district court GRANT Plaintiffs' request for $2,639.08.

CONCLUSION

---

[5] The 28.5 hours reflect the recommended deductions of 18.33 hours from
Plaintiffs' total requested 46.83 hours as follows: (1) 3 hours for clerical tasks; (2)
4.08 hours for insufficient description; (3) 2.75 hours for block billing; and (4) 8.5
hours for excessiveness.

The Court FINDS AND RECOMMENDS that the district court GRANT IN PART AND DENY IN PART Plaintiffs' Motion for Default Judgment Against Defendant Nghi Phan Nhat as follows:

(1)     Enter default judgment in favor of Plaintiffs against Defendant Nhat;

(2)     Permanently enjoin Defendant Nhat from inducing and contributorily infringing on Plaintiffs' Works;

(3)     Award statutory damages in the total amount of $150,000, which is $30,000 for each Work;

(4)     Award Plaintiffs a total of $7,125.00 for attorneys' fees; and

(5)     Award Plaintiffs a total of $2,639.08 for costs.

IT IS SO FOUND AND RECOMMENDED.

DATED:  Honolulu, Hawaii, June 15, 2020.



Kenneth J. Mansfield
United States Magistrate Judge

*Hunter Killer Productions, Inc., et al. v. Qazi Muhammad Zarlish, et al.*, CV 19-00168 LEK-KJM; Findings and Recommendation to Grant in Part and Deny in Part Plaintiffs' Motion for Default Judgment Against Defendant Nghi Phan Nhat